UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Anthony Leonardi,

    Plaintiff,

v.

Dimitra Freeman, et al.

    Defendant.

Case No. 1:03cv900

Judge Michael R. Barrett

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Defendant Dimitra Freeman's Motion for Summary Judgment (Doc. 14) and the Motion for Summary Judgment of Defendants Pete Dames, Joe Brinkman, Benjamin Sublett and Aaron Knapke (Doc. 16).  Plaintiff has filed a Response in Opposition (Doc. 25) and Defendant Knapke filed a Reply (Doc. 26).  This matter is now ripe for review.

**I.  BACKGROUND INFORMATION**

Plaintiff originally filed his complaint in the Hamilton County Court of Common Pleas on November 25, 2003 (Doc. 1, Exhibit A).  Defendants filed a Notice of Removal to this Court on December 22, 2003 (Doc. 1).  Plaintiff's complaint alleges the following:

    Count 1    Malicious Prosecution Against Defendant Freeman;

    Count 2    Abuse of Process Against Defendant Freeman;

    Count 3    Defamation Against Dimitra Freeman;

    Count 4    Libel Per Se Against Dimitra Freeman;

    Count 5        Defamation Claims Against Defendants Brinkman and Knapke;

    Count 6        Libel Per se Against Defendants Brinkman and Knapke;

    Count 7        Intentional Infliction of Emotional Distress Against Defendants Freeman, Knapke and Brinkman;

    Count 8        Tortious Interference With a Business Relationship Against Freeman, Knapke and Brinkman; and

    Count 9        Civil Conspiracy Against Defendants Freeman, Knapke, Brinkman, Sublett and Dames.

Upon review of Defendants motions for summary judgment, in his memorandum in opposition, Plaintiff withdrew all of his claims as to Freeman, Brinkman, Sublett and Dames. Plaintiff also withdrew his claims as to Knapke on Counts 8 and 9. Thus, the only claims remaining are Count 5, 6 and 7 as to Defendant Knapke.

## II. FACTS RELEVANT TO REMAINING CLAIMS

Both Plaintiff and Defendant Knapke, at all times relevant, were employees of United Parcel Services ("UPS") at the Gest Street facility (Complaint, ¶1, 3; Answer, ¶1, 3). The employees of UPS are governed by a collective bargaining agreement ("CBA"). See Exhibit A to Doc. 16. Defendant Knapke was in a management position (Knapke Depo., p9-11). On December 6, 2002, while serving an unpaid suspension for events not relevant to this motion, Plaintiff called UPS (Complaint, ¶11; Answer, ¶11). Defendant Knapke answered the call at which point a conversation between Plaintiff and Defendant took place (Complaint, ¶12; Answer, ¶12). The substance of this conversation is a material fact in dispute. Defendant assets that Plaintiff stated the following: "Did you hear I won my case against that nigger in court today?" (Knapke Depo., p. 25-27, see also Complaint,

2

¶12). Plaintiff admits that he spoke to Defendant Knapke but denies that he ever used the word "nigger" (Complaint, ¶12; Leonardi Depo, p58). Defendant Knapke then relayed what he alleged to have heard to former Defendant Brinkman and later to former Defendant Sublett (Complaint, ¶13; Answer, ¶13). Upon his return to work from his unpaid suspension, Plaintiff was terminated from his employment (Complaint, ¶14; Answer, ¶14). Plaintiff was discharged because Plaintiff's alleged comment violated UPS' professional conduct and anti-harassment policy (Complaint, ¶14; Answer, ¶14). Plaintiff filed a grievance which was not affirmed or denied due to a deadlock at the local level and then later denied by the State Arbitration Panel.

### III. ARGUMENTS OF THE PARTIES

Plaintiff claims that Defendant Knapke lied about Plaintiff's alleged use of the word "nigger." Plaintiff asserts that Defendant Knapke defamed him and caused him intentional emotional distress when he asserted that Plaintiff used the word "nigger" in their conversation, which led to his termination from UPS.

Defendant Knapke asserts that he reported exactly what he heard and that he has a duty to report such discriminatory behavior thus making the publication privileged and the conduct not extreme and outrageous. Defendant further asserts that Plaintiff's claim is preempted by §301 of the Labor Management Relations Act.

### IV. LAW AND ANALYSIS

A. <u>Summary Judgment Standard</u>.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." Fed.R.Civ.P. 56©. The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the non-moving party. *Id.* at 252.

    B.    <u>Legal Analysis.</u>

        1.    Preemption.

Defendant argues that Plaintiff's state law claims of defamation, libel per se and intentional infliction of emotional distress are all preempted by §301 of the Labor Management Relations Act (LMRA), 29 U.S.C. §185(a), and therefore must be dismissed. In *Lingle v. Norge Div. Of Magic Chef*, 486 U.S. 399, 410 (1988), the Supreme Court found that §301 preempts state law claims that are founded directly on rights created by a CBA, or substantially dependent on an analysis of a CBA. The Sixth Circuit has developed a two-step approach to determine if a state law claim is or is not dependent on an analysis of a CBA. *Decoe v. General Motors Corp.*, 32 F.3d 212 (6th Cir. 1994). The first step is to determine whether proof of a state law claim requires an interpretation of the terms of a CBA and second, determine whether the right claimed by plaintiff is created by the CBA, state law or both. *Id.* at 216. If the right arises solely from state law and does not require

4

interpretation of a CBA, the cause of action is not preempted. A plaintiff must satisfy both steps of the analysis for preemption not to apply. *Id.*

In order to make the first determination, the court is not bound by the "well-pleaded complaint" rule, but rather, looks to the essence of the plaintiff's claim, in order to determine whether the plaintiff is attempting to disguise what is essentially a contract claim as a tort. *DeCoe* v. GMC, 32 F.3d at 216 (6th Cir. 1994) *citing Terwilliger v. Greyhound Lines, Inc.*, 882 F.2d 1033, 1037 (6th Cir. 1989), cert. denied, 495 U.S. 946, 109 L. Ed. 2d 531, 110 S. Ct. 2204 (1990). If the plaintiff can prove all of the elements of his claim without the necessity of contract interpretation, then his claim is independent of the labor agreement. *Id. citing Dougherty v. Parsec, Inc.*, 872 F.2d 766, 770 (6th Cir. 1989). Moreover, neither a tangential relationship to the CBA, nor the defendant's assertion of the contract as an affirmative defense will turn an otherwise independent claim into a claim dependent on the labor contract. *Id. citing Fox v. Parker Hannifin Corp.,* 914 F.2d 795, 800 (6th Cir. 1990).

The elements of defamation, which include libel and slander, in Ohio are the following: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. *Akron-Canton Waste Oil, Inc. v. Safety-Kleen Oil Serv., Inc.* 81 Ohio App.3d 591, 601 (1992). In order for the statement to be considered libel per se, the words used in the publication must have the tendency to

injure the plaintiff in his trade or occupation.[1] *Wilson v. Harvey*, 164 Ohio App. 3d 278, 286 (Ohio Ct. App. 2005).

Defendant argues that Plaintiff can not succeed on these claims without an interpretation of the CBA. The Court disagrees. The Complaint at paragraph 14 alleges that Plaintiff was terminated as a result of a violation of UPS' policy against anti-harassment. In their Answer "Defendants admit the termination occurred because Plaintiff's comment violated United Parcel Services' professional conduct and anti-harassment policy." See Doc. 4, ¶14. In addition, such policy is attached to Defendant's motion (Doc. 16, Exhibit C). There is no evidence before this Court that the "Professional Conduct And Anti-Harassment Policy" is a part of the CBA. Thus, the Court does not need to interpret the CBA for evaluate Plaintiff's claim of defamation. It need only look to the "Professional Conduct And Anti-Harassment Policy" which is applicable to all employees, union or not[2].

Furthermore, defamation is a state law claim. It is not a right provided for by a CBA. If the right arises solely from state law and does not require interpretation of a CBA, the cause of action is not preempted. *DeCoe*, supra, 32 F.3d at 216. *See Lingle v. Norge Div. Of Magic Chef, Inc.,* 486 U.S. 399, 409 (1988) (Even if dispute resolution to a collective bargaining agreement, on the one hand, and state law, on the other, would require

---

[1]There are actually three categories to be considered in determining libel per se: (1) the imputation of a charge of an indictable offense involving moral turpitude or infamous punishment; (2) the imputation of some offensive or contagious diseases calculated to deprive the person of society; or (3) having the tendency to injure the plaintiff in his trade or occupation. *Wilson v. Harvey*, 164 Ohio App. 3d 278, 286 (Ohio Ct. App. 2005). However, the first two categories are not applicable to the present matter.

[2]The Policy specifically states "No employee in this organization is exempt from this policy."

addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for §301 pre-emption purposes).  Plaintiff's claim for defamation is not preempted by § 301 of the LMRA.

To prove a claim for intentional infliction of emotion distress the Plaintiff must prove the following: (1) the defendant intended to cause the plaintiff serious emotional distress; (2) the defendant's conduct was extreme and outrageous; and (3) the defendant's conduct was the proximate cause of the plaintiff's serious emotional distress.  *Fitzgerald v. Roadway Express, Inc.,* 262 F. Supp.2d 849, 858 (2003) *citing Phung v. Waste Management, Inc.*, 71 Ohio St.3d 408, 410 (1994).  Based upon the same reasoning above, Plaintiff's claim for intentional infliction of emotion distress is not preempted by §301 as the Court need only interpret the "Professional Conduct And Anti-Harassment Policy," not the CBA to determine if such alleged conduct is "extreme and outrageous."[3]  Also, it is uncontested that this claim is one solely of state law as neither party argues otherwise.

    2.    Defamation and Libel Per Se.

As stated above, the elements of defamation, including libel and slander, in Ohio are the following: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.  *Akron-Canton Waste Oil,*

---

[3]Obviously, if the "Professional Conduct And Anti-Harassment Policy" is incorporated into the CBA this analysis would be different, however, there is no evidence in the record that this is the case.

*Inc. v. Safety-Kleen Oil Serv., Inc.* 81 Ohio App.3d 591, 601 (1992). A defamatory statement is a false statement "causing injury to a person's reputation, or exposing him to public hatred, contempt, ridicule, shame or disgrace, or affecting him adversely in his trade or business." *Matalka v. Lagemann*, 21 Ohio App.3d 134, 136 (1985). In order for the statement to be considered libel per se, the words used in the publication must have the tendency to injure the plaintiff in his trade or occupation.[4] *Wilson v. Harvey*, 164 Ohio App. 3d 278, 286 (Ohio Ct. App. 2005). Libel per se is defined as actionable in itself, i.e. it is libel by the very meaning of the words used. *Wilson v. Harvey*, 164 Ohio App. 3d 278, 285-286 (Ohio Ct. App. 2005). Actual malice and damages are presumed in an action for libel per se and thus need not be proven. *Id. citing McCartney v. Oblates of St. Francis deSales* (1992), 80 Ohio App. 3d 345, 354, 609 N.E.2d 216.

Plaintiff asserts that the alleged defamatory statement is false. Defendant asserts that it is not false, and that Defendant repeated and reported exactly what Plaintiff said. Although truth is a complete defense to a claim of defamation, this is a question of fact for a jury to determine.

Defendants further argue any publication made by the Defendant would be privileged and therefore can not be defamation. However, if a jury determines that the statement was, in fact, not true then any privilege would not extend to Defendant as a "privileged communication is one made in good faith..." See *Hahn v. Kotten,* 331 N.E.2d

---

[4] There are actually three categories to be considered in determining libel per se: (1) the imputation of a charge of an indictable offense involving moral turpitude or infamous punishment; (2) the imputation of some offensive or contagious diseases calculated to deprive the person of society; or (3) having the tendency to injure the plaintiff in his trade or occupation. *Wilson v. Harvey*, 164 Ohio App. 3d 278, 286 (Ohio Ct. App. 2005). However, the first two categories are not applicable to the present matter.

8

713, 718-719 (Ohio 1975). If the jury would find that Defendant lied about what Plaintiff said in that telephone conversation then it could also find that the publication of the statement was not made in good faith and therefore, not privileged. However, if a jury finds that the statement was, in fact, said by Plaintiff then the privilege would apply.

As to the last two elements of the claim of defamation, fault and harm. Plaintiff has shown, and Defendant has not argued to the contrary, sufficient evidence to survive summary judgment as to the elements of fault and harm. Defendant does not deny making the publication nor does Defendant deny that this publication led to Plaintiff's termination.

### 3. Intention Infliction of Emotion Distress.

To prove a claim for intentional infliction of emotion distress the Plaintiff must prove the following: (1) the defendant intended to cause the plaintiff serious emotional distress; (2) the defendant's conduct was extreme and outrageous; and (3) the defendant's conduct was the proximate cause of the plaintiff's serious emotional distress. *Fitzgerald v. Roadway Express, Inc.,* 262 F. Supp.2d 849, 858 (2003) *citing Phung v. Waste Management, Inc.*, 71 Ohio St.3d 408, 410 (1994). "In defining what is 'extreme and outrageous,' Ohio has approved the standard expressed in the Restatement, 2d of Torts, which proves for liability only 'where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id. citing Reamsnyder v. Jaskolski,* 10 Ohio St.3d 150, 153 (1984).

Defendant argues that he has not acted outrageously where he has done only that upon which he has a legal right, i.e., that the Professional Conduct And Anti-Harassment Policy required him to report such a statement allegedly made by Plaintiff. *See DeCoe,* 32

F.3d at 218. However, if a jury finds that such a statement was not, in fact, said by the Plaintiff then there is no legal right to report the alleged statement and it would be a question for a jury to determine then if such conduct is extreme and outrageous.

Defendant next argues that his conduct, even if a jury would find that Plaintiff did not make the statement, is not extreme and outrageous. Defendant cites to *Godfredson v. Hess & Clark, Inc.,* 173 F.3d 365, 375-56 (6th Cir. 1999) in support of his argument. The Court in *Godfredson* held that "an employee's termination, even if based upon discrimination, does not rise to the level of 'extreme and outrageous conduct' without proof of something more. If such were true, then every discrimination claim would simultaneously become a cause of action for the intentional infliction of emotional distress." *Id*. The difference between the present matter and *Godfredson* is that this case is not a suit against the employer for wrongful termination but, instead, is an action against a co-worker for allegedly spreading a lie which led to Plaintiff's termination. Knowingly making a inaccurate statement that will likely lead to one's termination could be found to be extreme and outrageous.

Defendant also cites to *Garraway v. Diversified Material Handling, Inc.*, 975 F. Supp. 1026, 1034 (N.D. Ohio 1997) wherein that Court stated "Plaintiff has cited this Court to no case, and this Court is aware of none, in which racially based epithets and insults were held to be actionable as defamation" to support his argument that use of the word "nigger' is not defamatory or actionable outrageous conduct under Ohio law. However, the facts of *Garraway* are distinguishable to the facts of this case. In *Garraway* the alleged defamation were considered to be verbal abuse. The Court went on to state that "Verbal abuse such as obscenities, vulgarities, insults, epithets, name calling and other rhetorical

hyperbole is not in itself actionable and libelous." *Id.* Here, the statement complained of is not verbal abuse but instead is an alleged fabrication that led to Plaintiff's termination.

In response to Defendant's arguments, Plaintiff points out that the Sixth Circuit has held, in a case before that Court under completely different theories of liability, that "case law makes clear that the use of the work "nigger," even taken in isolation, is not a "mere offensive utterance." *Johnson v. United Parcel Service*, 117 Fed. Appx. 444 (2004, unpublished) *citing McGinest v. GTE Serv. Corp.,* 360 F.3d 1103, 1116 (9th Cir. 2004) and *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 185 (4th Cir. 2001).

Based upon the above, if a jury finds that Defendant intended to cause Plaintiff's termination by way of publishing the false statement then it is a question for the jury as to whether or not such conduct is extreme and outrageous.

### 4. State Arbitration Panel.

Defendant also agues that Plaintiff should not be given another bite at the proverbial apple since the State Arbitration Panel found there was just cause to discharge Plaintiff and that a jury should not be allowed to second guess the State Arbitration Panel. Citing to *Pritchard v. Dent Wizard Int'l Corp.,* 275 F. Supp.2d 903, 914 (S.D. Ohio 2003), the Defendant argues that "as a matter of public policy, the Court can and should give the State Arbitration Panel decision preclusive effect as to the issue of whether Knapke truthfully reported Leonardi's comments." (Doc. 26, FN10). However, the Court in *Pritchard* specifically stated the following:

> Unlike state court judgments, federal courts are not required to give arbitration awards preclusive effect. *See McDonald v. City of West Branch, Michigan*, 466 U.S. 284, 287-88, 80 L. Ed. 2d 302, 104 S. Ct. 1799 (1984) (noting that 28 U.S.C. § 1738 does not require federal courts to give arbitration awards full faith and credit because arbitration is not a judicial

11

proceeding). Nevertheless, under certain circumstances, where the parties have had full opportunity to be heard in arbitration, federal courts may give arbitration judgments preclusive effect as a matter of public policy. *See Stulberg v. Intermedics Orthopedics, Inc.*, 997 F. Supp. 1060, 1068 (N.D. Ill. 1998) (affording preclusive effect to arbitrator's decision in breach of contract case where both parties "received an extensive opportunity to fully litigate the breach of contract issue" before the arbitrator); *In re Robinson*, 256 B.R. 482, 488 (Bankr. S.D. Ohio 2000) ("Where the parties have had a full and fair opportunity to participate and litigate the pertinent issues before the arbitration panel, it would be unfair to provide the losing party with a 'second bite at the apple.'"). *Pritchard v. Dent Wizard Int'l Corp.,* 275 F. Supp. 2d 903, 914 (D. Ohio 2003).

Based upon the record currently before this Court, the Court is unable to ascertain whether or not Plaintiff had a full opportunity to participate and litigate before the State Arbitration Panel. Furthermore, Plaintiff's defamation, libel per se and intentional infliction of emotion distress claims were not presented before the State Arbitration Panel. Thus, the Court finds that this argument has no merit.

C. <u>Conclusion.</u>

Thus, Defendant Freeman's Motion for Summary Judgment (Doc. 14) is hereby GRANTED. The Motion for Summary Judgment of Defendants Dames, Brinkman, Sublett and Knapke (Doc. 16), is hereby GRANTED, in part, and DENIED, in part. The parties will proceed to trial on counts five, six and seven as to Defendant Knapke.

**IT IS SO ORDERED.**

/s/ Michael R. Barrett  
Michael R. Barrett, Judge  
United States District Court